Frederick W. Alworth
Robert C. Brady
Timothy J. Duva
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey  07102-5310
(973) 596-4500

falworth@gibbonslaw.com
rbrady@gibbonslaw.com
tduva@gibbonslaw.com

*Attorneys For Plaintiff*
*McLane Foodservice, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| McLANE FOODSERVICE, INC., a Texas Corporation,<br><br>                    Plaintiffs,<br><br>          v.<br><br>READY PAC PRODUCE, INC. a California Corporation, TANIMURA & ANTLE, INC., a California Corporation and ABC COMPANIES I-V,<br><br>                    Defendants. | ***Document Filed Electronically***<br><br>Civil Action No. 10-06076 (RMB) (JS)<br><br><br><br>**MODIFIED FIRST AMENDED COMPLAINT** |

McLane Foodservice, Inc. ("McLane"), by and through its counsel Gibbons P.C., by way of Amended Complaint against defendants Ready Pac Produce, Inc. ("Ready Pac"), Tanimura & Antle, Inc. ("Tanimura") and ABC Companies I-V (collectively, "Defendants"), hereby alleges as follows:

### <u>THE NATURE OF THE ACTION</u>

1.      This matter seeks damages, <u>inter alia</u>, for breach of contract, breach of warranty, and indemnification against Ready Pac and Tanimura arising out of the alleged presence, in the

Taco Bell supply chain and in certain Taco Bell restaurants' meals served to patrons, of produce contaminated with the Escherichia coli ("E. coli") bacteria in November and December 2006.  As it relates to McLane, there were approximately twenty-five matters filed in the state courts of New Jersey, New York and Pennsylvania, wherein individuals who allegedly sustained damages from consuming the E. coli contaminated food asserted claims against McLane.  In addition there was litigation in the United States District Court for the Eastern District of Pennsylvania filed by a group of franchisees.  As outlined herein, in addition to defense costs, and the payment of settlements, McLane has been damaged through its loss of profits, the loss of good will, the destruction of inventory, and other out-of-pocket expenses.

## PARTIES, JURISDICTION AND VENUE

2.      McLane is a Texas corporation with its principal place of business in Carrollton, Texas.  McLane is a national foodservice distributor.  McLane maintains 18 different distribution centers nationwide, including one in Burlington, New Jersey.  Plaintiff McLane is therefore a citizen of the State of Texas for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

3.      Ready Pac is a California corporation with its principal place of business in Irwindale, California.  Ready Pac is a supplier of fresh-cut produce to foodservice organizations throughout North America.  Ready Pac has contracted with Yum! Brands Inc. ("Yum!"), Taco Bell's parent corporation (and/or Yum!'s express agent, the Unified Foodservice Purchasing Co-op, LLC ("UFPC")), to be the supplier of produce for certain Yum! brand restaurants, including the Taco Bell restaurants.  Defendant Ready Pac is therefore a citizen of the State of California for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

4.      Tanimura is a California corporation which sends product to the State of New Jersey and otherwise transacts business in the State of New Jersey.  Tanimura's principal place of business is in Salinas, California.  Tanimura may be served through its registered agent,

Robert V. Antle, at 14174 Reservation Road, Salinas, California 93912.  Upon information and belief, at all relevant times, Tanimura has provided and performed various services as part of the Yum! supply chain and is responsible in whole or in part for the alleged E. coli contamination.  Defendant Tanimura is therefore a citizen of the State of California for purposes of diversity jurisdiction under 28 U.S.C. § 1332.

5.       Upon information and belief, at all relevant times, defendants ABC Companies I-V and/or their authorized agents, affiliates, employees, subsidiaries, parents, subcontractors, licensees, or other representatives provided and performed various services as part of the Yum! supply chain and are responsible in whole or in part for the alleged E. coli contamination.

6.       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, inasmuch as McLane and all defendants are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.00.

7.       Venue in the United States District Court for the District of New Jersey is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action occurred in this district and Defendants are subject to personal jurisdiction in this district.  Additionally, venue is proper in this jurisdiction because a suit based on diversity of citizenship jurisdiction may be brought "in a judicial district where any defendant resides."  Id. Under 28 U.S.C. § 1391(c), a defendant corporation "resides" in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

## FACTS

8.       Yum! is the largest restaurant company in the world. Yum! operates or licenses more than 35,000 Taco Bell, KFC, Pizza Hut, Long John Silver's and A&W Restaurants worldwide, all of which are "quickservice" (a/k/a "fast food") chains.  Although Yum! does own and operate a number of outlets itself, the majority of its restaurant outlets in the United States

are operated by franchisees.

9.      Like most quickservice chains, Yum! partners with various product manufacturers to produce highly-customized equipment, supplies (e.g., logo cups, napkins, etc.) and menu components (e.g., ground beef, sliced tomatoes, canned salsa, etc.) for use, assembly and sale exclusively in the chain's restaurants.[1]   In this case, Ready Pac was and is one such producer. Yum! has selected Ready Pac to be the exclusive regional processor and provider of all of the produce components that are used in many of Taco Bell restaurants' menu items.   These include, for example, shredded lettuce, chopped onions, and diced tomatoes.   A graphic illustrating the relationship between Yum!, McLane, Ready Pac and the franchisees is attached hereto as Exhibit A.[2]

10.      As such, Ready Pac's functional role is to procure raw produce from the farm level -- in this case Tanimura -- process it to Taco Bell's specifications (i.e., shred the lettuce, chop the onions, dice the tomatoes, etc.) and then package it according to Taco Bell's further specifications, typically in sealed plastic bags.   These plastic bags are then further enclosed in sealed cardboard boxes by the producer before being shipped out to centralized warehouses

---

[1]     Much or all of this supplier selection and management is performed by the Unified Foodservice Purchasing Co-op, LLC ("UFPC"), a purchasing cooperative organization that Yum! and most of it franchisees have appointed to serve as their express agent for this purpose. Because the UFPC acts as Yum!'s and/or the franchisees' agent, Yum! and/or the franchisees are fully responsible for the UFPC's sourcing decisions and purchasing actions as if they were their own.

[2]  As the graphic shows, Yum! is the axis of the relationship. Only Yum! has contractual relationships with each of the entities involved in the Yum! supply chain; and, except for the Distribution Agreement between the distributor and franchisee, which follows a form prescribed and approved by Yum!, no two of the supply chain participants have contracts with one another, but rather only with Yum!.

operated by distribution companies selected and designated by Yum![3]

11.     In this case, McLane is one such distribution company.   McLane maintains 18 different distribution centers nationwide, a fleet of approximately 900 trucks, and roughly 1,300 professional truck drivers in addition to numerous warehouse workers and managers.   McLane does not manufacture or process anything.   Nor does McLane have any role in selecting any of Taco Bell's suppliers, or prescribing how they manufacture or process their products.[4]   McLane does not even have any role in determining the pricing of these products, which is instead established solely between Yum! and the supplier.

12.     Instead, McLane's function is, first, to receive and warehouse regular shipments

---

[3]  For example, here are photographs of one such bagged-and-boxed, pre-processed product – sliced green onions – that Ready Pac was producing and shipping to McLane at the time of the E. coli outbreak in 2006:

 

(EXTERIOR VIEW)                              (INTERIOR VIEW)

The photograph on the left depicts the products in the sealed-box form as they were, and still are, received, stored, and delivered every day by McLane. The photograph on the right depicts one such box that McLane opened and photographed at its distribution center in December 2006 solely to contemporaneously document the inner packaging that was typical of Ready Pac-supplied produce. It was subsequently destroyed, as is any box that becomes opened or damaged in McLane's possession.

[4]  Indeed, McLane is contractually prohibited from performing such a role.  Section 1(c) of the Yum! Agreement states that "Seller [McLane] hereby acknowledges that it shall have no role in the process of approving any supplier or the specifications for the Restaurant Products."

of products from all the suppliers selected and contracted by Yum!.  These products range from meat to produce, from cups to napkins, and from cleaning items to window signage.  McLane continually deals with more than 300 different suppliers who regularly ship items to McLane at Yum!'s request.  McLane does not have written contractual relationships with these suppliers; instead, they are selected, contracted and controlled solely by Yum!.  The vast majority of items that McLane handles are highly-specialized or customized goods that are exclusive to Yum!.

13.     McLane's second function is to receive and process orders from the various Yum! restaurants in the region, to compile those ordered goods from McLane's warehouse stocks, and then to deliver those orders to each restaurant.

14.     Many of the aspects of the Yum!-McLane relationship are designed to assure that McLane adheres to certain quality-control and reliability measures at the handling and transportation level that ultimately help Yum! maintain its high brand image and integrity.  So, for instance, McLane is required to check and record temperatures of inbound product upon receipt, to maintain certain temperatures in its warehouse and on its trucks, and to keep trailers locked during transit.[5]

**Tanimura & Antle, Inc.**

15.     As stated in the Third-Party Complaint filed by Ready Pac in this action on May 25, 2011 [Document 22], "the lettuce Ready Pac provided to [McLane] which ultimately was distributed to Taco Bell restaurants during the relevant time period, was provided to Ready Pac

---

[5]  These requirements and many others are embodied in written Quality Assurance standards promulgated from time to time by Yum!.

by Tanimura.[6]

16.     Upon information and belief, on or about September 8, 2006, Ready Pac Foods, Inc., on behalf of itself and its subsidiary Ready Pac, entered into a written Purchase Agreement with Tanimura for the provision of produce.

17.     Upon information and belief, Tanimura entered into a Safe Produce Guarantee ("Guarantee") wherein it certified that all produce provided by it complied with the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301. The Guarantee warrants that the produce is not adulterated or misbranded, and that it does not contain any unsafe or nonconforming additives within the meaning of any applicable state food and drug law. Under the Guarantee, Tanimura acknowledged that Ready Pac relied upon the Guarantee as an inducement for purchasing the produce.

18.     Upon information and belief, Tanimura was aware that the produce it supplied to Ready Pac would be part of the Yum! supply-chain described above.  Specifically, Tanimura was aware that produce supplied by it to Ready Pac would be processed by Ready Pac, and that the processed produce would subsequently be shipped by McLane to various quickservice food chains.

19.     In addition to its contractual obligations to Ready Pac, Tanimura had a duty to provide produce in compliance with state and federal regulations to foreseeable downstream users such as McLane.

20.     As initially set forth in Ready Pac's Third-Party Complaint, Tanimura breached this duty by providing produce tainted by the E. coli virus, which was subsequently provided by

---

[6]   After oral argument, the Third-Party Complaint filed by Ready Pac was dismissed by consent of Ready Pac and Tanimura.  Upon information and belief, Ready Pac and Tanimura reached an agreement to litigate the claims between them in another jurisdiction.

Ready Pac to McLane.

21.     McLane was unaware of the identity of the lettuce supplier Ready Pac believed caused the outbreak and was responsible to pay damages to the parties in the Yum! distribution system, including McLane, until Ready Pac identified Tanimura in the Initial Disclosures received by McLane on April 11, 2011 and confirmed by the now defunct Third-Party Complaint filed by Ready Pac on May 25, 2011.

**Pertinent Contract Provisions Among the Yum! Supply Chain Participants**
**The Ready Pac-UFPC Agreement**

22.     Ready Pac and Yum! (and/or UFPC, as its express agent) at all relevant times were parties to a Supplier Business Relationship Agreement ("SBR Agreement"), dated January 12, 2001.   The SBR Agreement contains a provision whereby downstream purchasers, including distributors like McLane, are express third-party beneficiaries of those protections and are entitled to enforce such obligations and restrictions directly against Ready Pac.

23.     The SBR Agreement contains an indemnification provision wherein Ready Pac agreed to indemnify McLane and other Yum! distributors for any damages arising out of the produce supplied by Ready Pac.   Indeed, Section 16 of the SBR Agreement provides that Ready Pac is obligated to indemnify and defend McLane for all lawsuits related to Ready Pac's produce.   Specifically, that provision provides:

> Supplier hereby agrees to <u>defend, indemnify and hold harmless</u> UFPC, its <u>Designated Purchasers</u>,[7] and Tricon, as well as each of their respective franchisees, officers, directors, licensees,

---

[7]   "Designated Purchaser" is defined in the SBR Agreement as "only those Operators, <u>Approved Distributors</u>, subsidiaries of UFPC and the Concept Co-ops, and other Persons affiliated with the Tricon System (including UPGC, Inc. d/b/a Unified Purchasing Group of Canada) from time to time designated in writing by UFPC as authorized to benefit from and purchase Goods, directly or indirectly, from Supplier pursuant to this Agreement."   <u>See</u> Supplier Business Relationship Agreement, § 1(a) (emphasis added).   McLane is an Approved Distributor as defined under the terms of the agreement.   <u>See id.</u> ("Approved Distributors" shall mean distributors approved by Tricon to distribute Goods to Operators.") (emphasis in original).

cosignees, agents, employees, representatives, successors and assigns (collectively the **"Indemnified Parties"**) from and against any and all claims, suits, losses, damages, liabilities and/or expenses (including reasonable attorneys' fees) of every kind whatsoever which may arise from or be connected with (a) the breach of any warranty, express or implied, and/or any accident, occurrence, injury to persons or property which may occur before or after acceptance of the Goods by any of them which shall arise from, be caused by, or be connected with, in whole or in part, the preparation, processing, manufacture, completion, delivery, operation, consumption and/or use of the Goods, and/or (b) the breach of any covenant or agreement of Supplier contained in this agreement.   Such defense and indemnity shall include, without limitation, any claim that an Indemnified Party is liable for damage, injury, loss, cost or expense resulting from its or their design, approval or use of the Goods (including but not limited to, any cost or expense relating to warranty or other claims relating to Goods purchased by UFPC or any Designated Purchaser).   …If Supplier fails to promptly assume and vigorously defend any action relating to the foregoing indemnities, then the Indemnified Party or other affected party as appropriate, and their respective successors in interest and assignees may, but an [sic] not obligated to, defend the action in the manner it or they deem appropriate, and Supplier shall pay to the appropriate party any amount incurred, which shall include, for this purpose, any settlement incurred or agreed to by it or they in effecting such defense, as well as all reasonable legal fees and costs incurred….

Id. (emphasis added).

**The E. coli Outbreak**

24.     In late November and early December 2006, dozens of individuals in several Northeastern states allegedly became ill with symptoms consistent with E. coli infection.  Health officials determined a common link, in that all these sickened people had reported eating at one or more Taco Bell restaurants in New Jersey, New York, Pennsylvania or Delaware, prior to falling ill, but the precise cause remained uncertain.

25.     According to published reports, by mid-December 2006, the Center for Disease Control ("CDC") determined that iceberg lettuce used in various Taco Bell menu items was likely responsible for the outbreak.  See Exhibit B.  According to published reports, officials traced this contaminated lettuce all the way back to growing areas in California's Central Valley, from which

Ready Pac presumably sourced much or all of its iceberg lettuce at the farm level.

26.    Ready Pac was the sole supplier of all the produce items distributed by McLane to all Taco Bells to which it distributed in the region.

27.    Ready Pac sold and delivered to McLane food contaminated with E. coli.

**Related Law Suits & Demands for Defense and Indemnification**

28.    On or about, August 18, 2008, Summerwood Corporation, a Taco Bell franchisee that operates more than 70 Taco Bell Restaurants in Pennsylvania, Delaware and New Jersey, commenced two related actions in the United States District Court for the Eastern District of Pennsylvania seeking damages arising from the alleged damages suffered by the franchisee from the alleged E. coli contamination.  Those matters were captioned:   Spruce Restaurants L.P. v. McLane Food Service, Inc., Civil Action No. 08-3662 and Maple Restaurants, L.P. v. McLane Food Service, Inc., Civil Action No. 08-3929 (hereinafter collectively, the "Summerwood Matters").   The Summerwood Matters were assigned to the Honorable Eduardo Robreno, U.S.D.J.  Ultimately, however, the Summerwood Matters were settled before any filings were made by Ready Pac.  Moreover, no lawyer entered an appearance on behalf of Ready Pac in the Summerwood Matters.

29.    By letter dated December 12, 2008, McLane tendered the defense and indemnification of the Summerwood Matters to Ready Pac.  A true and accurate copy of McLane's letter tendering the defense and indemnification of the Summerwood Matters to Ready Pac is attached hereto as Exhibit C.  Despite this demand, Ready Pac did not agree to indemnify or defend McLane in the Summerwood Matters.

30.    McLane has also been named a defendant in more than twenty lawsuits in New Jersey, New York and Pennsylvania arising from the alleged E. coli contamination, all of which

have since been dismissed.  These matters include:

(a)      Samanthia Thiagaram, et al. v. El Rancho New Jersey, et al., Superior Court of New Jersey, Middlesex County, Docket No. MID-L-868-08;

(b)      Ashley Beam, et al. v. Yum Brands, Inc., et al., Superior Court of New Jersey, Middlesex County, Docket No.: MID-L-572-09;

(c)      Lashonda Coley, et al. v. McLane, Superior Court of New Jersey, Middlesex County, Docket No. MID-L-970908;

(d)      Anthony Rubio v. Taco Bell, et al., Superior Court of New Jersey, Middlesex County, Docket No. MID-L-2268-07;

(e)      Robert Bennett, et al. v. McLane, Superior Court of New Jersey, Middlesex County, Docket No. MID-L-9394-08;

(f)      Sandra Lassiter v. Yum!, et al., Superior Court of New Jersey, Middlesex County, Docket No. MID-L-9965-08;

(g)      Michael Villanti v. Great Lakes Cheese Co., et al., Superior Court of New Jersey, Middlesex County, Docket No. MID-L-9605-08;

(h)      Erik Mintz v. Great Lakes Cheese Co., et al., Superior Court of New Jersey, Middlesex County, Docket No. MID-L-9606-08;

(i)      Cynthia Nicol v. Yum! Brands, Inc., et al., Superior Court of New Jersey, Middlesex County, Docket No. MID-L-2809-07;

(j)      Carl & Vivian Dee v. Yum! Brands, Inc., et al., Superior Court of New Jersey, Middlesex County, Docket No. MID-L-9834-06;

(k)      Catherine Paczkowski v. Yum! Brands, Inc., et al., Superior Court of New Jersey, Middlesex County, Docket No. MID-L-8308-07;

(l)      Laura Thompson v. Yum! Brands, Inc., et al., Superior Court of New Jersey, Middlesex County, Docket No. MID-L-3562-07;

(m)      Karylanne Baker v. Taco Bell Corp., et al., Superior Court of New Jersey, Middlesex County, Docket No. MID-L-3786-08;

(n)      Simeon Hall, et al. v. Taco Bell Corp., et al., Superior Court of New Jersey, Middlesex County, Docket No. MID-L-5477-07;

(o)      Robert Bennett v. McLane Food Service, Superior Court of New Jersey, Middlesex County, Docket No. MID-L-9394-07;

(p)      Holly Jacobetz, Guardian Ad Litem for Lorrana Rodriguez v. Yum! Brands, Inc., et al., Superior Court of New Jersey, Middlesex County, Docket No. MID-L-3865-08;

(q)     Lashonda Coley v. Yum! Brands, Inc., et al., Superior Court of New Jersey, Middlesex County, Docket No. MID-L-3897-08;

(r)     Michael Okpor vs. Cherry Hill Mall Taco Bell, et. al., Superior Court of New Jersey, Special Civil Part, Camden County, Docket No.: DC-024304-08;

(s)     Shirley Smith v Berlin Taco Bell, et al., Superior Court of New Jersey, Special Civil Part, Camden County, Docket No.: DC-023591-08

(t)     Sarah Briglia v. Yum! Brands, Inc., et al., Supreme Court State of New York, County of Suffolk, Index No. 2006-34932;

(u)     Diane & Gerald Vaincourt v. Taco Bell Corp., et al., Supreme Court State of New York, County of Suffolk, Index No. 2008-1553.

(v)     Steven Daniel Riordan v. Taco Bell, et al., Supreme Court of the State of New York, County of Suffolk, Index No. 30509/07

(w)     Debra Moyer v. Yum! Brands, Inc., et al., Pennsylvania Court of Common Pleas, Montgomery County, Docket No. 08-26628;

(x)     Gina DiBattista v. Summerwood Corp., et al., Pennsylvania Court of Common Pleas, Philadelphia County, Docket No. October Term, 2008 N0. 1520; and

(y)     Elliot Weiford v. Yum! Brands, et al., Pennsylvania Court of Common Please, Philadelphia County, Docket No. October Term 2008 No. 2743.

(these matters are hereinafter collectively referred to as the "Products Matters").

31.     By letters dated December 23, 2008 and January 9, 2009 respectively, McLane tendered the defense and indemnification of the Products Matters to Ready Pac.  True and accurate copies of McLane's letters tendering the defense and indemnification of the Products Matters to Ready Pac are attached hereto as Exhibit D.  Despite these demands, Ready Pac has not agreed to indemnify or defend McLane in the Products Matters, and McLane was forced to defend those cases.

32.     Since Ready Pac failed to adhere to its tender obligations, McLane has incurred substantial costs and expenses arising out of the defense of these matters, including, but not limited to, attorneys' fees, and costs of resolution.

**McLane's Losses from the E. coli Outbreak**

33.     The deepest and most-publicized injuries of the E. coli outbreak were the sickened consumers, and there is no question that Yum! and its Taco Bell franchisees suffered as well, in the form of lost profits and inventories.  But McLane also bore very real impacts and injuries as well, as it was forced to destroy more than $200,000 in produce from its distribution centers during early December 2006 in order to flush potential contaminants from the supply chain.  To date, neither Ready Pac nor any other party has reimbursed McLane for these losses.

34.     Additionally, as Taco Bell restaurants' chainwide-sales dipped in the months following the outbreak due to consumer sentiment and concern, McLane's sales to Taco Bell dipped likewise.  Consequently, McLane has suffered lost profits.

## CAUSES OF ACTION

### COUNT ONE
#### (Breach of Contract against Ready Pac)

35.     McLane repeats and realleges the allegations contained in Paragraphs 1 through 34 of the Amended Complaint as though fully set forth herein at length.

36.     The SBR Agreement is a valid and binding contract between the parties.

37.     As part of the SBR Agreement Ready Pac promised to indemnify McLane and other Yum! distributors for any damages arising out of the produce supplied by Ready Pac, including by way of example and not limitation, the payment of settlements and/or judgments, otherwise providing coverage to McLane for McLane's liability relating to the Summerwood Matters and the Product Matters, as well as payment for McLane's lost profits, damages related to destruction of inventory, McLane's out-of-pocket expenses, and all other expenses related to the E. coli outbreak as all costs are subject to the express terms of the SBR Agreement.

38.     McLane timely and fully performed all of its obligations under the SBR

Agreement.

39.     As a result of McLane's performance, Ready Pac is contractually obligated to indemnify McLane and other Yum! distributors for any damages arising out of the produce supplied by Ready Pac, including by way of example and not limitation, the payment of settlements and/or judgments, otherwise providing coverage to McLane for McLane's liability relating to the Summerwood Matters and the Product Matters, as well as payment for McLane's lost profits, damages related to destruction of inventory, McLane's out-of-pocket expenses, and all other expenses related to the E. coli outbreak as all costs are subject to the express terms of the SBR Agreement.

40.     Ready Pac's refusal to indemnify McLane and other Yum! distributors for any damages arising out of the produce supplied by Ready Pac constitutes a breach of the SBR Agreement.

41.     As a direct and proximate result of Ready Pac's breach of contract, McLane has suffered damages.

**WHEREFORE,** McLane demands judgment against Ready Pac for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

<u>**COUNT TWO**</u>
*(Third Party Beneficiary against Tanimura and ABC Companies)*

42.     McLane repeats and realleges the allegations contained in Paragraphs 1 through 41 of the Amended Complaint as though fully set forth herein at length.

43.     At the time that the SBR Agreement was entered into, it was anticipated and/or reasonably should have been anticipated by Tanimura and ABC Companies that McLane and

14

other third-parties that were part of the Yum! distribution network would be relying upon the fact that Ready Pac had made certain obligations pursuant to the SBR Agreement.

44.     Tanimura and ABC Companies were on notice that members of the Yum! distribution network would be relying on the representations and promises that Ready Pac made as part of the SBR Agreement.  Specifically, Tanimura was aware that Ready Pac would be supplying McLane with lettuce and other produce through the Yum! distribution chain to be utilized in quickservice restaurants such as Taco Bell.

45.     Indeed, upon information and belief, Tanimura entered into a Guarantee with Ready Pac wherein it certified that all produce provided by it complied with the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301. The Guarantee warrants that the produce is not adulterated or misbranded, and that it does not contain any unsafe or nonconforming additives within the meaning of any applicable state food and drug law.  Under the Guarantee, Tanimura acknowledged that Ready Pac relied upon the Guarantee as an inducement for purchasing the produce.

46.     Upon information and belief, Tanimura profited from its sale of produce to Ready Pac, knowing that the produce would be supplied to McLane and would be part of the Yum! supply-chain described above.  Specifically, Tanimura was aware that produce that it supplied to Ready Pac would be processed by Ready Pac, and that the processed produce would subsequently be shipped by McLane to various quickservice food chains.  The sale of lettuce and other produce to Ready Pac conferred significant profits upon Tanimura.

47.     In addition to its contractual obligations to Ready Pac, Tanimura had a duty to provide produce in compliance with state and federal regulations to foreseeable downstream users such as McLane.

48.    As initially set forth in Ready Pac's now defunct Third-Party Complaint against Tanimura, Tanimura breached this duty by providing produce tainted by the e. coli bacteria, which was subsequently provided by Ready Pac to McLane.

49.    Because Ready Pac has breached the SBR Agreement by failing to indemnify McLane and other Yum! distributors for any damages arising out of the produce supplied by Ready Pac, including by way of example and not limitation, the payment of settlements and/or judgments, otherwise providing coverage to McLane for McLane's liability relating to the Summerwood Matters and the Product Matters, as well as payment for McLane's lost profits, damages related to destruction of inventory, McLane's out-of-pocket expenses, and all other expenses related to the E. coli outbreak as all costs are subject to the express terms of the SBR Agreement, McLane has been damaged.

**WHEREFORE,** McLane demands judgment against Tanimura and ABC Companies for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

## <u>COUNT THREE</u>
### (*Quasi-Contract against Tanimura and ABC Companies*)

50.    McLane repeats and realleges the allegations contained in Paragraphs 1 through 49 of the Amended Complaint as though fully set forth herein at length.

51.    McLane's actions as described herein, conferred financial benefit upon Tanimura and ABC Companies and formed a quasi-contract between Tanimura and McLane.

52.    By reason of the foregoing, Tanimura and ABC Companies have engaged in breach of quasi-contract.

53.    Tanimura's and ABC Companies' breach of the quasi-contract has caused

McLane to be harmed and suffer damages.

**WHEREFORE,** McLane demands judgment against Tanimura and ABC Companies for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

## COUNT FOUR
### *(Negligence against Tanimura and ABC Companies)*

54.     McLane repeats and realleges the allegations contained in Paragraphs Nos. 1 through 53 of the Amended Complaint as though fully set forth herein at length.

55.     Tanimura and ABC Companies were under a duty to exercise reasonable care in providing lettuce and other produce to Ready Pac.  Tanimura knew, or should have known, that the produce it supplied to Ready Pac would be processed by Ready Pac, and subsequently shipped by McLane to various quickservice food chains.

56.     As initially set forth in Ready Pac's Third-Party Complaint, Tanimura and ABC Companies breached this duty to McLane by providing produce tainted by the E. coli bacteria, which was subsequently provided by Ready Pac to McLane.

57.     As a result of the above referenced breach of duty, McLane has suffered reasonably foreseeable injuries, and is entitled to damages in an amount to be determined at trial.

**WHEREFORE,** McLane demands judgment against Tanimura and ABC Companies for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

**COUNT FIVE**
*(Breach of Express Warranties against Ready Pac)*

58.     McLane repeats and realleges the allegations contained in Paragraphs 1 through 57 of the Amended Complaint as though fully set forth herein at length.

59.     Upon information and belief, Ready Pac issued numerous written warranties to McLane as a beneficiary of the SBR Agreement wherein Ready Pac expressly warranted, <u>inter alia</u>:

(a)     That Ready Pac had been informed of the particular purpose for which the goods were required and that McLane and others were relying on Ready Pac's skill and judgment to furnish suitable goods, and that the goods would be fit for such particular purpose (Warranty of Fitness for a Particular Purpose);

(b)     That the goods were manufactured, processed, fabricated and/or produced and could be shipped, sold and used in a customary manner without violation of any law, ordinance, rule or regulation of any governmental or administrative body, including, <u>inter alia</u>, the Food, Drug and Cosmetic Act (Warranty of Conformity to Law);

(c)     That the produce would be of merchantable quality (Warranty of Merchantability);

(d)     That Ready Pac would assume entire responsibility for the safety of all goods it supplies to the Yum! system when used for their intended or reasonable foreseeable purposes (Warranty of Safety); and

(e)     That Ready Pac would utilize Good Agricultural Practices ("GAP") to, <u>inter alia</u>, prevent contamination and ensuring handling, packaging and storage of the produce to prevent contamination, and that the produce it was providing would be of fair average quality,

could pass without objection in the trade and were fit for the ordinary purposes for which the produce is used, i.e., human consumption.

60.     McLane has performed all conditions, covenants and promises required to be performed on its part in accordance with the warranties.

61.     Ready Pac has breached these warranty obligations by not taking steps to ensure that the goods were fit for a particular purpose, that they conformed to law, that they were merchantable, that they were safe, and that they utilized Good Agricultural Practices ("GAP") to, inter alia, prevent contamination and ensuring handling, packaging and storage of the produce to prevent contamination, and that the produce it was providing would be of fair average quality, could pass without objection in the trade and are fit for the ordinary purposes for which the produce is used, i.e., human consumption.

62.     Ready Pac's breach of these warranties was a substantial factor in causing McLane to suffer economic losses and other general, consequential and specific damages in an amount to be shown at trial.

**WHEREFORE,** McLane demands judgment against Ready Pac for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

<u>**COUNT SIX**</u>
*(Breach of Implied Warranty of Merchantability against Ready Pac)*

63.     McLane repeats and realleges the allegations contained in Paragraphs 1 through 62 of the Amended Complaint as though fully set forth herein at length.

64.     The food items delivered to McLane by Ready Pac were subject to the implied warranty of merchantability included in the Uniform Commercial Code because Ready Pac was a merchant of food items.

65.     At all relevant times, Ready Pac was a merchant with respect to the goods that were delivered to McLane.

66.     The food contaminated by E. coli that Ready Pac delivered to McLane failed to conform to the implied warranty of merchantability.

67.     Ready Pac has been notified that the food it processed, packaged and delivered to McLane was contaminated, failed to satisfy the required specifications, and failed to meet the standards represented by Ready Pac and failed to comply or meet the warranties and standards required by law.

68.     McLane has sustained reasonably foreseeable losses due to Ready Pac's breach of warranty and failure to provide conforming goods.

69.     As a direct and proximate cause of Ready Pac's breach of the implied warranty of merchantability, McLane has sustained said injuries, damages, and losses in excess of $75,000.00, and is entitled to just, reasonable and adequate compensation therefore.

**WHEREFORE,** McLane demands judgment against Ready Pac for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

<u>**COUNT SEVEN**</u>
*(Breach of Implied Warranty of Merchantability against Tanimura and ABC Companies)*

70.     McLane repeats and realleges the allegations contained in Paragraphs 1 through 69 of the Amended Complaint as though fully set forth herein at length.

71.     The food items provided to Ready Pac by Tanimura and/or ABC Companies and which were then delivered to McLane were subject to the implied warranty of merchantability included in the Uniform Commercial Code because Tanimura and/or ABC Companies were

merchants of food items.

72.     At all relevant times, Tanimura and/or ABC Companies were merchants with respect to the goods that were delivered to McLane.

73.     The food contaminated by E. coli that was delivered to McLane failed to conform to the implied warranty of merchantability.

74.     Tanimura and/or ABC Companies have been notified that the food it processed, packaged and delivered to McLane was contaminated, failed to satisfy the required specifications, and failed to meet the standards represented to Ready Pac and/or by Ready Pac to McLane and failed to comply or meet the warranties and standards required by law.

75.     McLane has sustained reasonably foreseeable losses due to Tanimura's and ABC Companies' breach of warranty and failure to provide conforming goods.

76.     As a direct and proximate cause of Ready Pac's breach of the implied warranty of merchantability, McLane has sustained said injuries, damages, and losses in excess of $75,000.00, and is entitled to just, reasonable and adequate compensation therefore.

**WHEREFORE,** McLane demands judgment against Tanimura and ABC Companies for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

## COUNT EIGHT
### *(Breach of Implied Warranty of Fitness for a Particular Purpose against Ready Pac)*

77.     McLane repeats and realleges the allegations contained in Paragraphs 1 through 76 of the Amended Complaint as though fully set forth herein at length.

78.     The food items delivered to McLane by Ready Pac were subject to the implied warranty of fitness for a particular purpose included in the Uniform Commercial Code because Ready Pac was aware of the particular purpose for which McLane would use these goods and because McLane relied upon Ready Pac's skill and judgment as to the suitability of food for the purpose intended by McLane to be delivered to Yum! franchisees.

79.     Any food contaminated by E. coli failed to conform to the implied warranty of fitness for a particular purpose as the food was not fit for the particular purpose of human consumption.

80.     Ready Pac was notified that the food it provided was contaminated, failed to satisfy the required specifications, and failed to meet the standards represented by Ready Pac and failed to comply or meet the warranties and standards required by law.

81.     As a direct and proximate cause of Ready Pac's  breach of the implied warranty of fitness for a particular purpose, McLane has sustained said injuries, damages, and losses in excess of $75,000.00, and is entitled to just, reasonable and adequate compensation therefore.

**WHEREFORE,** McLane demands judgment against Ready Pac for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

## COUNT NINE
### (Unjust Enrichment against Ready Pac)

82.     McLane repeats and realleges the allegations contained in Paragraphs 1 through 81 of the Amended Complaint as though fully set forth herein at length.

83.     To the extent there is a determination that McLane is liable for damages resulting from the delivery of produce to Plaintiff and/or other Taco Bell restaurants, there would be a

resulting economic benefit conferred upon Ready Pac and ABC Companies to which they are not entitled.

84.     To permit Ready Pac to retain the benefit of a determination as to liability against McLane would result in an unjust enrichment at McLane's expense and detriment.

85.     As a direct and proximate result of Ready Pac's conduct they have been unjustly enriched and McLane has suffered damages in an amount in excess of $75,000.00, subject to proof at trial.

**WHEREFORE,** McLane demands judgment against Ready Pac for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

### COUNT TEN
### *(Unjust Enrichment against Tanimura and ABC Companies)*

86.     McLane repeats and realleges the allegations contained in Paragraphs 1 through 85 of the Amended Complaint as though fully set forth herein at length.

87.     To the extent there is a determination that McLane is liable for damages resulting from the delivery of produce McLane received from Ready Pac, which was grown by Tanimura and/or ABC Companies, and Tanimura and/or ABC Companies were compensated for the sale of such produce, there would be a resulting economic benefit conferred upon Tanimura and ABC Companies to which they are not entitled.

88.     To permit Tanimura and/or ABC Companies to retain the benefit of a determination as to liability against McLane would result in an unjust enrichment at McLane's expense and detriment.

89.     As a direct and proximate result of Tanimura's and ABC Companies' conduct

they have been unjustly enriched and McLane has suffered damages in an amount in excess of $75,000.00, subject to proof at trial.

**WHEREFORE,** McLane demands judgment against Tanimura and ABC Companies for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

## COUNT ELEVEN
### *(Breach of Covenant of Good Faith and Fair Dealing against Ready Pac)*

90.    McLane repeats and realleges the allegations contained in Paragraphs 1 through 89 of the Amended Complaint as though fully set forth herein at length.

91.    At all times, Ready Pac had a duty to act in good faith and to deal fairly with McLane in connection with the Agreement.

92.    Ready Pac intentionally, deliberately and in bad faith refused and failed to discharge their contractual obligations by failing to indemnify McLane and other Yum! distributors for any damages arising out of the produce supplied by Ready Pac, including by way of example and not limitation, the payment of settlements and/or judgments, otherwise providing coverage to McLane for McLane's liability relating to the Summerwood Matters and the Product Matters, as well as payment for McLane's lost profits, damages related to destruction of inventory, McLane's out-of-pocket expenses, and all other expenses related to the E. coli outbreak as all costs are subject to the express terms of the SBR Agreement.

93.    Ready Pac has no legal justification for its failure to indemnify McLane and for any damages arising out of the produce supplied by Ready Pac.

94.    As a result of its conduct, Ready Pac breached its duty of good faith and fair dealing, and has deprived McLane of its reasonable expectations and benefits under the SBR Agreement.

95.    As a result, McLane has suffered damages.

**WHEREFORE,** McLane demands judgment against Ready Pac for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

<u>**COUNT TWELVE**</u>
*(Contractual Indemnification against Ready Pac)*

96.    McLane repeats and realleges the allegations contained in Paragraphs 1 through 95 of the Amended Complaint as though fully set forth herein at length.

97.    As more fully set forth above, McLane has tendered the defense of the Summerwood Matters and the Product Matters to Ready Pac and has asserted that Ready Pac is obligated to indemnify McLane for any amounts that it has or may become legally obligated to pay in settlements and/or judgments in connection with the Summerwood Matters and/or the Product Matters.

98.    Under the express terms and conditions of the SBR Agreement, Ready Pac has agreed to defend, indemnify and hold harmless McLane for any settlements and/or judgments, or otherwise provide coverage for any claims, proceedings or suits related to the preparation, processing, manufacture, completion, delivery, operation, consumption and/or use of Ready Pac's products.

99.    Ready Pac has a duty to indemnify McLane for any settlements and/or judgments, or otherwise provide coverage to McLane for McLane's liability relating to the Summerwood Matters and the Product Matters, as well as payment for McLane's lost profits,

damages related to destruction of inventory, McLane's out-of-pocket expenses, and all other expenses related to the E. coli outbreak as all such costs are subject to the express terms of the SBR Agreement.

100.   McLane has paid various settlements in connection with the Summerwood Matters, and has suffered lost profits, damages related to destruction of inventory, out-of-pocket expenses related to the Summerwood Matters and the Product Matters, and has therefore suffered damages.

**WHEREFORE,** McLane demands judgment against Ready Pac for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

### COUNT THIRTEEN
#### *(Defense Costs against Ready Pac)*

101.   McLane repeats and realleges the allegations contained in Paragraphs 1 through 100 of the Amended Complaint as though fully set forth herein at length.

102.   As more fully set forth above, McLane has tendered the defense of the Summerwood Matters and the Product Matters to Ready Pac and has asserted that Ready Pac is obligated to reimburse certain defense costs incurred by McLane in connection with the Summerwood Matters and the Product Matters.

103.   Under the express terms and conditions of the SBR Agreement, Ready Pac has agreed to defend and hold harmless McLane for any settlements and/or judgments, or otherwise provide coverage for any claims, proceedings or suits related to the preparation, processing, manufacture, completion, delivery, operation, consumption and/or use of Ready Pac's products.

104.   Ready Pac has a duty to defend McLane for any settlements and/or judgments,

or otherwise provide coverage to McLane for McLane's liability relating to the Summerwood Matters and/or the Product Matters, as all such claims and actions are subject to the express terms of the SBR Agreement.

105.   McLane has paid various defense costs  in connection with the Summerwood Matters and Products Matters, and has therefore suffered damages.

**WHEREFORE,** McLane demands judgment against Ready Pac for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

<u>**COUNT FOURTEEN**</u>
*(Contractual Contribution against Ready Pac)*

106.   McLane repeats and realleges the allegations contained in Paragraphs 1 through 105 of the Amended Complaint as though fully set forth herein at length.

107.   As more fully set forth above, McLane has tendered the defense of the Summerwood Matters and the Product Matters to Ready Pac and has asserted that Ready Pac is obligated to reimburse certain defense costs incurred by McLane in connection with the Summerwood Matters and the Product Matters.

108.   Under the express terms and conditions of the SBR Agreement, Ready Pac has agreed to provide coverage to McLane for any claims, proceedings or suits related to the preparation, processing, manufacture, completion, delivery, operation, consumption and/or use of Ready Pac's products.

109.   Ready Pac has a duty of contribution to McLane for any settlements and/or judgments, or otherwise provide coverage to McLane for McLane's liability relating to the Summerwood Matters and/or the Product Matters.

110.    McLane has paid defense costs in connection with the Products Matters and the Summerwood Matters and has paid settlements in connection with the Summerwood Matters. McLane has therefore suffered damages.

**WHEREFORE,** McLane demands judgment against Ready Pac for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

### COUNT FIFTEEN
### *(Common Law Contribution against Ready Pac, Tanimura and ABC Companies)*

111.    McLane repeats and realleges the allegations contained in Paragraphs 1 through 110 of the Amended Complaint as though fully set forth herein at length.

112.    As more fully set forth above, various plaintiffs have asserted causes of action against McLane in the Summerwood Matters, the Product Matters and other litigation.

113.    While denying liability to the Plaintiffs in the Summerwood Matters and the Product Matters for any damages alleged, McLane demands contribution from Ready Pac, Tanimura and ABC Companies for the settlement paid in the Summerwood Matters and any judgments entered or settlements entered  in the Products Matters.

**WHEREFORE,** McLane demands judgment against Ready Pac, Tanimura and ABC Companies for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

### COUNT SIXTEEN
### *(Common Law Indemnification against Ready Pac, Tanimura and ABC Companies)*

114.    McLane repeats and realleges the allegations contained in Paragraphs Nos. 1 through 113 of the Amended Complaint as though fully set forth herein at length.

115.    As more fully set forth above, various plaintiffs have asserted causes of action against McLane in the Summerwood Matters, the Product Matters and other litigation.

116.    While McLane denies liability to the Plaintiffs in the Summerwood Matters and the Product Matters for any damages alleged, if a judgment is recovered against McLane by the Plaintiffs in the Summerwood Matters and/or the Product Matters, it is hereby asserted that McLane's liability will be secondary, passive, technical, procedural, or imputed, and that Ready Pac, Tanimura and ABC Companies will be primarily, actively, and directly liable, and shall serve to indemnify and hold harmless McLane.

**WHEREFORE,** McLane demands judgment against Ready Pac, Tanimura and ABC Companies for compensatory damages, incidental damages, consequential damages, loss of good will, and loss of profits, in an amount greater than $75,000.00, together with interest, attorneys' fees, and costs of suit.

**GIBBONS P.C.**
*Attorneys for Plaintiff*
*McLane Foodservice, Inc.*

s/ Robert C. Brady
Frederick W. Alworth
Robert C. Brady
Timothy J. Duva

Dated:  September 9, 2011

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I hereby certify that, to the best of my knowledge, the following related matters are currently now pending:

- Insurance Company of Hanover, et al., v. McLane Foodservice Distribution, et al., Superior Court of New Jersey, Bergen County, Docket No. BER-L-922-10;

- Praetorian Insurance Company v. McLane Foodservice Distribution, et al., Superior Court of New Jersey, Atlantic County, Docket No. ATL-L-6756-10;

- <u>Quick Service Management, Inc., et al. v. Certain Underwriters at Lloyd's, London Subscribing to Policy Certificate 330030 06 2609, et al.</u>, Superior Court of New Jersey, Middlesex County, Docket No. MID-L-4681-07; and

- <u>McLane Foodservice, Inc. v. Ready Pac Produce, Inc.</u>, Superior Court of New Jersey, Middlesex County, Docket No. MID-L-8538-10.

**GIBBONS P.C.**
*Attorneys for Plaintiff*
*McLane Foodservice, Inc.*

s/ Robert C. Brady
Frederick W. Alworth
Robert C. Brady
Timothy J. Duva

Dated:  September 9, 2011