[Doc. No. 106]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MCLANE FOODSERVICE, INC., <br><br> Plaintiff, <br><br> v. <br><br> READY PAC PRODUCE, INC., et al., <br><br> Defendants. | Civil No. 10-6076 (RMB/JS) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the "Motion to Compel" [Doc. No. 106] filed by plaintiff McLane Foodservice, Inc. ("McLane"). The motion calls upon the Court to address the contours of what the Court will refer to as the community-of-interest ("COI") or common interest doctrine.[1] The discussion takes place in the context of plaintiff's request for documents related to a "traceback analysis" prepared by Ready Pac Produce, Inc. ("Ready Pac"). The analysis was prepared after an E-coli bacteria outbreak ("outbreak") at a number of Taco Bell Restaurants. The Court received the opposition of Ready Pac and co-defendant Tanimura & Antle, Inc. ("Tanimura"), held oral argument,

---

[1]The reported cases are hopelessly inconsistent concerning the nomenclature to use. Various decisions refer to the COI doctrine or privilege, the common interest doctrine or privilege, the common interest rule or exception, or the joint defense privilege. For the most part the terms are used interchangeably.

and received the parties' supplemental submissions. The Court also reviewed the documents in question in camera. For the reasons to be discussed, plaintiff's motion is DENIED.[2]

**BACKGROUND**

This lawsuit arises out of an E-coli outbreak in November and December, 2006, at Taco Bell Restaurants in New Jersey, New York and Pennsylvania. After the outbreak, various lawsuits were filed by, inter alia, customers, franchisees and suppliers, some of which have been settled. Plaintiff is a distribution company that receives and warehouses products from suppliers to Taco Bell Restaurants. Plaintiff is seeking damages allegedly resulting from the outbreak, including, but not limited to, litigation costs, destruction of product, lost business and lost profits.

---

[2] Plaintiff's Motion to Compel was filed before defendants served their privilege logs. This accounts for plaintiff's omnibus request that the Court rule that the COI doctrine does not apply to any of the documents exchanged by Ready Pac and Tanimura. Not wanting to render an advisory opinion, and recognizing that defendants' COI claim should be analyzed in the context of specific document requests, the Court directed the parties to identify representative documents that fit into the following categories: (1) the cause or source of the outbreak; (2) investigations of the outbreak; (3) investigations and inspections of Tanimura's facilities; (4) Tanimura's communications with Ready Pac; and (5) Tanimura's communications with government investigators. Defendants represent that only the documents in category (4) are being withheld. These documents touch on the topics identified in categories (1) and (2). The documents in categories (3) and (5) are no longer at issue. The documents at issue were selected by counsel as representative of the universe of documents being withheld because of defendants' COI claim. This opinion only addresses the selected documents. The documents comprise approximately 42 separate entries on defendants' privilege logs.

2

Yum! is the largest restaurant company in the world and operates or licenses more than 35,000 Taco Bell, KFC, and other fast food chains. Complaint ¶7. The majority of Yum!'s restaurants are operated by franchisees. Id. Yum! selected Ready Pac "to be the exclusive regional processor and provider of all of the produce components that are used in many of Taco Bell restaurants' menu items. These include, for example, shredded lettuce, chopped onions, diced tomatoes." Complaint ¶8. Ready Pac procures raw produce from farms, processes it to Taco Bell's specifications, and then packages it according to Taco Bell's specifications. Id. at ¶9. Plaintiff alleges the outbreak was caused by the lettuce that Ready Pac supplied. Plaintiff also alleges that Tanimura supplied Ready Pac with the contaminated lettuce that was eventually sold at Taco Bell's Restaurants. Ready Pac and Tanimura deny the outbreak was caused by contaminated lettuce. In the alternative, if it is determined that lettuce caused the outbreak, Ready Pac and Tanimura blame each other.

After the outbreak, Ready Pac's counsel prepared a "traceback analysis." The analysis was a substantial undertaking to attempt to establish a distribution chain for each delivery from the subject Taco Bell stores to growers. In other words, the analysis attempted to trace the lettuce consumed by the customers who fell ill through the supply chain to the particular grower and field. The traceback was conducted using all of the information Ready Pac

3

had for every individual about whom it could obtain information. Tanimura alleges: "[a] properly conducted trace-back analysis is a critical element both in assessing the strength of [its] defense (for better or worse) and in further developing it by identifying flaws in the analysis that can be addressed through further fact development or evaluation." See May 12, 2012 Letter Brief ("LB") at 2.

Plaintiff did not name Tanimura in its original complaint filed on November 19, 2010. On May 25, 2011, Ready Pac filed its third-party complaint against Tanimura. Ready Pac denied that its lettuce caused the outbreak but alleged that if the jury so finds then Tanimura supplied the contaminated lettuce. After the third-party complaint was filed, Ready Pac and Tanimura jointly requested the Court to stay the third-party proceedings. Plaintiff objected to the request. On August 8, 2011, Ready Pac voluntarily dismissed its third-party complaint.

On September 1, 2011, plaintiff filed an amended complaint naming Ready Pac and Tanimura.[3] In addition to their cross-claims in this case, Ready Pac and Tanimura filed lawsuits against each other in California. Ready Pac is seeking to recover the damages resulting from the outbreak including, inter alia, payments made to Yum! and injured consumers, business interruption losses and legal

---

[3]A Modified First Amended Complaint addressing jurisdictional deficiencies was filed on September 1, 2011.

4

fees.  In addition, related insurance coverage and franchisee litigation is pending in different courts.  In the early part of 2012, the parties in the outbreak related litigation unsuccessfully attempted to mediate a settlement.

The exemplar documents selected by counsel fit into five categories: (1) drafts of the traceback analysis; (2) communications between counsel discussing the analysis; (3) communications regarding the drafting of defendants' "Common Interest and Confidentiality Agreement" ("CIC Agreement" or "Agreement"); (4) communications to prepare for the global mediation; and (5) a letter summarizing the pending outbreak related litigation.  The documents generally reveal that in or about mid-2011, Ready Pac and Tanimura agreed to exchange documents to further their alleged common interests.  Effective as of June 24, 2011, Ready Pac and Tanimura entered into their CIC Agreement. One of the common interests identified in the CIC Agreement was to develop common positions on issues raised by the outbreak claims. Presumably this includes the defense that defendants' lettuce did not cause the outbreak.  Subsequent to the execution of the Agreement Ready Pac produced to Tanimura a copy of its traceback analysis.  Defendants also exchanged written communications regarding the analysis and held a joint meeting to discuss the traceback.  Defendants also discussed the joint strategy for their mediation.

5

The present motion addresses plaintiff's request for a copy of Ready Pac's traceback analysis and communication between Ready Pac and Tanimura regarding the analysis.  Plaintiff is not contesting that the documents at issue are work-product, but claims that the work-product protection was waived when Ready Pac and Tanimura shared the documents.  Defendants argue the documents are protected from discovery by the COI doctrine.

**DISCUSSION**

The first question to address is what law to apply.  The parties agree that the claims in this matter are based solely on state law and no federal question is presented.  As a federal court exercising jurisdiction of state law claims, the court must apply state law to questions of privilege, either New Jersey, the forum state, or the state law of California, where the alleged privileged materials were shared and where Ready Pac and Tanimura entered into their CIC Agreement.  See Fed. R. Evid. 501; In re Teleglobe Communications Corp. ("Teleglobe"), 493 F.3d 345, 358 (3d Cir. 2007)(applying Delaware law to a contract dispute arising in connection with a bankruptcy proceeding).  See also Pearson v. Miller, 211 F.3d 57, 66 (3d Cir. 2000)("In general, federal privileges apply to federal law claims, and state privileges apply to claims arising under state law.").  The parties agree that vis-a-vis the common interest doctrine, New Jersey and California law do not materially differ.  Therefore, New Jersey law will apply.

6

P.V. ex. rel. T.V. v. Camp Jaycee, 197 N.J. 132, 143 (2008)(if no conflict exists, there is no choice of law issue to be resolved, and the Court should apply New Jersey law). However, even if there was a conflict between New Jersey and California law, New Jersey law would still apply because New Jersey has the most significant relationship with the parties and issues. Id. This is evidenced by the fact that plaintiff's distribution facility is located in New Jersey, the outbreak occurred in New Jersey, and the case is pending in New Jersey. Therefore, New Jersey law will apply.

The parties dispute whether New Jersey or federal common law applies to determine the contours of the COI doctrine. The Court finds that New Jersey law applies. Plaintiff's contrary argument is based on the uncontroverted notion that federal law applies to determine if a document is protected by the work-product doctrine. See Fed. R. Civ. P. 26(b)(3). While this may be true, the COI doctrine is not the same as the work product analysis. Here, the Court does not have to decide if the work-product doctrine protects defendants' documents because plaintiff does not contest the issue. However, whether the documents are protected from discovery by the COI doctrine is a separate question from whether the documents are work-product.

The parties dispute whose burden it is to establish that the COI doctrine applies. This analysis is not difficult. It is well-established that the party seeking protection because of the work-

7

product doctrine has the burden of proof.  Cooper Health System v. Virtua Health, Inc., 259 F.R.D. 208, 213 (D.N.J. 2009).  The parties do not contest this issue.  Thereafter, the party asserting that the protection was waived has the burden of proof. Maldonado v. New Jersey ex. rel. Administrative Office of the Courts-Probation Division, 225 F.R.D. 120, 132 (D.N.J. 2004).  Plaintiff satisfied this burden by showing that defendants exchanged work-product protected documents.  Thereafter, the party denying waiver has the burden to show that the COI doctrine applies.  Teleglobe, 493 F.3d at 365 n. 22; Graco, Inc. v. PMC Global, Inc., 2011 U.S. Dist. LEXIS 14718, at *56 (D.N.J. Feb. 14, 2011).

The Court recognizes that the New Jersey cases discussed herein do not specifically refer to a COI privilege but instead refer to the concept as a doctrine or rule that determines whether work-product protection has been waived.  However, the cases treat the "doctrine" as a de facto privilege.  Just as the burden of proof is on the party asserting the work-product doctrine, the burden of proof is on the party asserting the COI doctrine. Further, it makes no sense to put the burden on plaintiff, rather than defendants, to prove that the COI doctrine does not apply. Defendants, not plaintiff, are in exclusive control of the information needed to establish a COI.  Plaintiff has no access to the information it needs to show that the COI doctrine does not apply other than through defendants' witnesses and documents.

8

Plaintiff's attempts to "get at" the information will undoubtedly be met with attorney-client and work-product objections. The burden of proof as to discovery issues should be on the party with the best access to the relevant information. See <u>Wachtel v. Guardian Life Ins. Co.</u>, 239 F.R.D. 376, 379 (D.N.J. 2006) (citation and quotation omitted)(the party with superior access to the evidence and who is in the best position to explain things, should come forward with the explanation). As to whether a common interest exists, defendants are in a better position than plaintiff to "explain things." Accordingly, it is defendants' burden to show that the COI doctrine applies, and it is not plaintiff's burden to show that the doctrine does not apply. Nevertheless, the issue is academic as the Court finds that defendants have met their burden.

Generally, the COI doctrine "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." <u>Teleglobe</u>, 493 F.3d at 364. The doctrine does not create a new or separate privilege, but instead prevents waiver of the attorney-client privilege, and work-product doctrine, when otherwise privileged communications are shared with a third party. Generally, the voluntary disclosure of a privileged communication to a third party or adversary waives attorney-client and work-product protection. See <u>U.S. v. Rockwell Intern.</u>, 897 F.2d 1255, 1265 (3d Cir. 1990). However, the COI doctrine "enables counsel for clients facing a common litigation

9

opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege." Haines v. Liggett Group, Inc., 975 F.2d 81, 94 (3d Cir. 1992). As noted by the Restatement (Third) of the Law Governing Lawyers, §76(1), cited with approval in Teleglobe, "[i]f two or more clients with a common interest in a litigated or nonlitigated matter are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client . . . is privileged as against third persons." Teleglobe, 493 F.3d at 366. In order for the doctrine to apply the communication must be shared with the attorney of the member of the community of interest. Id. at 364-65. The privilege only applies when clients are represented by separate counsel. Id. at 365.

The community of interest doctrine only applies when the members are pursuing a common legal interest as opposed to a business interest. Teleglobe, 493 F.3d at 365 ("[M]embers of the community of interest must share at least a substantially similar legal interest"); United States v. BDO Seidman, LLP, 492 F.3d 806, 815-16 (7th Cir. 2007), cert. denied, 128 S. Ct. 1471 (2008)("[T]he common interest doctrine only will apply where the parties undertake a joint effort with respect to a common legal interest"). "[T]he congruence-of-legal-interests requirement ensures that the privilege is not misused to permit unnecessary information

10

sharing." Teleglobe, 493 F.3d at 365.

Parties can have a common legal interest outside of the litigation context. In re Regents of University of California ("In re Regents"), 101 F.3d 1386, 1390-91 (Fed. Cir. 1996). However, the COI doctrine does not apply where a communication is designed to further a commercial transaction instead of a common legal strategy. Nidec Corp. v. Victor Co. of Japan, 249 F.R.D. 575, 580 (N.D. Cal. 2007); Bank of America, N.A. v. Terra Nova Ins. Co. Ltd., 211 F. Supp. 2d 493, 498 (S.D.N.Y. 2002).

As noted, the COI doctrine only applies to and protects "legal advice and communications." In re Regents, 101 F.3d at 1391. In other words, the doctrine only covers members' joint legal interests. See Smithkline Beecham Corp. v. Apotex Corp., 193 F.R.D. 530, 539 (N.D. Ill. 2000); Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 1998 WL 158961, at *2 (S.D.N.Y. April 1, 1998). License negotiations are not protected. MPT, Inc. v. Marathon Labels, Inc., 2006 WL 314435, at *7 (N.D. Ohio Feb. 9, 2006). The doctrine also does not include a joint business strategy that includes as one of its elements a concern about litigation. In re Rivastigmine Patent Litig., 2005 WL 2319005 (S.D.N.Y. Sept. 22, 2005).

The parties' dispute mainly focuses on one key issue. Plaintiff argues that Ready Pac and Tanimura cannot assert the COI doctrine because their interests are not identical. Plaintiff

11

points to the fact that Ready Pac sued Tanimura in this case and they are adverse to each other in their related California litigation. Plaintiff argues Ready Pac and Tanimura cannot have a community of interest if each is claiming the other is responsible for the outbreak, and if they are "aggressively fighting one another in this and other litigations." Reply Memorandum ("Reply Memo.") at 5. In addition, plaintiff argues:

> Ready Pac and Tanimura have failed to meet the burden of establishing that the common interest privilege applies. Ready Pac and Tanimura have asserted claims that are in direct conflict with one another, each party pointing the finger at the other as the cause of the E. coli contamination.

Supplemental Memorandum ("Supp. Memo.") at 2.

Defendants argue that in order to assert the COI doctrine it is not necessary that all their interests be the same. All that is necessary, defendants argue, is that they have a "common purpose" or a "substantially similar legal interest." Ready Pac and Tanimura argue that since they both have an interest in contesting plaintiff's assertion that lettuce was the cause of the outbreak, that is sufficient to protect the documents at issue from discovery.[4]

The Court agrees with plaintiff that defendants' interests are not identical. Defendants can hardly dispute this fact since they

---

[4]Ready Pac writes, "Tanimura and Ready Pac have a common interest in, among other things, defending against the alleged association of lettuce as the source of the Outbreak...." Brief in Opposition at 2.

are pursuing claims against each other in at least three lawsuits. Nevertheless, this does not disqualify defendants from asserting the COI doctrine. The leading New Jersey case on the issue is <u>Laporta v. Gloucester County Bd. of Chosen Freeholders</u>, 340 N.J. Super. 254 (App. Div. 2001). In <u>Laporta</u>, the court wrote:

> The common interest exception may be asserted with respect to communications among counsel for different parties if (1) the disclosure is made due to actual or anticipated litigation; (2) for the purposes of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentially against adverse parties.

<u>Id.</u> at 262 (citation and quotation omitted).[5] As to the requirement that a communication be for the purpose of furthering a common interest, the Court stated: "[i]mportantly, it is not necessary for every party's interest to be identical for the common interest privilege to apply. Rather, the parties must simply have a 'common purpose.'" <u>Id.</u>

In <u>Laporta</u>, the plaintiff alleged the defendants wrongfully terminated him after he was acquitted of federal criminal charges. After plaintiff was acquitted, the Gloucester County Prosecutor's

---

[5] As to the first and third requirements, there is no serious dispute they have been met. The documents at issue were exchanged during the pendency of this case and other lawsuits involving Ready Pac and Tanimura. Further, since the documents were exchanged pursuant to defendants' CIC Agreement, and defendants continue to assert the COI doctrine as to plaintiff, defendants' exchange was not inconsistent with maintaining confidentiality as to plaintiff. The key issue, therefore, is whether the documents were exchanged to further a common interest.

13

Office ("GCPO") investigated the matter. After LaPorta served a subpoena for the GCPO's documents, the defendants (Gloucester County Board of Chosen Freeholders and County of Gloucester) claimed privilege as to several documents. Holding that defendants waived their privilege when they gave the documents to the GCPO, the lower court denied defendants' privilege claim. The Appellate Division reversed. As noted, the Court held that the community of interest privilege applies when the parties have a "common purpose," and that an identity of all interests is not essential. The Court reasoned that waiver should be applied in a "commonsensical way" and that persons who share a common purpose should be able to communicate with their attorneys and each other to more effectively prosecute or defend their claims. Id. at 262-263. Accord O'Boyle v. Longport, 2012 WL 1810542, at *4 (N.J. Super. App. Div. May 21, 2012). ("The parties need not have identical interests, merely a 'common purpose'")[6]; Louisiana Mun. Police Employees Retirement System v. Sealed Air Corp., 253 F.R.D. 300, 310 (D.N.J. 2008)(citation omitted)("All of the

---

[6]In O'Boyle, the plaintiff sought to obtain from the Borough of Longport documents exchanged between its outside counsel, private counsel for a former Planning and Zoning Board member, and other persons who had been or were being sued by the plaintiff. The Court held, inter alia, that the documents were protected by the common interest rule. The Court reasoned that the "materials advanced a common interest, i.e., the defense of litigation spanning several years initiated by plaintiff related to his ongoing conflicts with Longport and individuals associated with the municipality. Id. at *4.

14

participants['] interests 'need not coincide.'").

The Laporta and O'Boyle decisions lead the Court to conclude that plaintiffs' motion should be denied. Although it is undoubtedly true that defendants' interests are not perfectly aligned, they have a common interest in establishing and arguing that lettuce did not cause the outbreak. To the extent the argument is made, the Court does not agree with plaintiffs that adversarial co-defendants cannot have a common interest or purpose as to a significant litigation related issue or strategy. Having the benefit of reading the documents at issue, the Court concludes that even though Ready Pac and Tanimura are adversaries as to some issues, a substantial purpose of their document exchange was to further their common purpose of showing that lettuce did not cause the outbreak. This is not surprising since defendants' documents were exchanged while they were exploring a potential resolution of all outbreak related litigation, and while they were preparing for their upcoming mediation. As stated in O'Boyle, at *4, referring to the Laporta holding, "[a]lthough the dual interests were not identical, they were sufficiently aligned that the common interest doctrine protected the communications from disclosure in the context of the work product privilege."

Since the Court must analyze plaintiff's waiver argument in a "commonsensical" way, it would be naive to conclude that Ready Pac did not have other purposes in mind when it shared its traceback

analysis and associated documents with Tanimura. After all, if a judgment is rendered against Ready Pac it will vigorously pursue its claim that Tanimura's lettuce caused the outbreak. Nevertheless, from its review of the documents at issue, the Court still concludes that a substantial reason for the document exchange was to further the common purpose of demonstrating that the outbreak was not caused by lettuce. This is consistent with the rationale in Laporta, 340 N.J. Super. at 262-63 (citation omitted), that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims."

Plaintiff relies on the decision in Net2Phone, Inc. v. Ebay, Inc., 2008 WL 8183817 (D.N.J. June 26, 2008). In that case the court reviewed de novo a Special Master's report that addressed, inter alia, community of interest issues. In the course of its background discussion, the Court noted that for the doctrine to apply the parties must have an identical legal interest with respect to the subject matter of the communication. Id. at *7. Plaintiff zeroes in on this language and argues the decision is controlling. Plaintiff's reliance on Net2Phone is misplaced for several reasons. First, unlike this case, federal common law applied, not New Jersey law. In Net2Phone jurisdiction was based on a federal question rather than diversity. Id. at *5. Second, since federal common law applied Net2phone did not cite to or rely

16

upon Laporta. Third, the court's ultimate ruling was not based on the "identify of interest" issue discussed herein, but instead focused on whether the alleged common interest was commercial rather than legal. Id. at *8, 10. Even though plaintiff contests defendants' purported reasons for exchanging their documents, plaintiff does not argue that the exchange was done to pursue a commercial rather than a legal interest. Four, in Net2Phone the Court did not discuss in detail what it meant when it referred to an identical legal interest with regard to the subject matter of a communication. Here, Ready Pac and Tanimura had an identical legal interest to show that lettuce did not cause the outbreak. It is unclear if this meets the standard set forth in Net2Phone. See S.E.C. v. Wyly, 2011 WL 2732245 at *1, (S.D.N.Y. July 5, 2011)(emphasis omitted)("Most courts have held that the common interest privilege can apply even if the clients are in conflict on some or most points, so long as the communication itself deals with a matter on which the parties have agreed to work toward a mutually beneficial goal.").

Plaintiff argues that even if the Court concludes that Laporta and O'Boyle apply, its motion should still be granted. Plaintiff's argument is based on its conclusion that the sole purpose of the traceback analysis and the parties' exchange was to prove that Tanimura's lettuce caused the outbreak. Plaintiff argues:

> Even if the Court were to accept that Ready Pac and Tanimura have a common interest in establishing that

17

> lettuce was not the cause of the outbreak, it is abundantly clear that they do not have a common interest with regard to whether it was Tanimura's lettuce that caused the outbreak. That is exactly what the traceback analysis purports to establish, and that is exactly what Ready Pac seeks to prove in its affirmative claims against Tanimura.

Supp. Memo. at 2. Plaintiff also argues: "the traceback analysis was conducted solely to determine whether Tanimura's lettuce, as opposed to someone else's lettuce, was the source of the outbreak." Supp. Memo. at 8.

Plaintiff supplies no support for its conclusions other than its suppositions. The Court's in camera review belies plaintiff's argument. The Court surmises that plaintiff's assumption derives from its disbelief that defendants are contesting that the outbreak was caused by lettuce. Plaintiff is convinced that no one can legitimately contest that lettuce caused the outbreak. Therefore, plaintiff assumes, the only purpose of defendants' document exchange was to bring Tanimura "to the settlement table." Despite plaintiff's confidence, however, defendants do not concede causation. In fact, defendants are vigorously contesting the issue. Although not determinative, this is explicitly set forth in several of defendants' withheld e-mail communications which were sent before plaintiff filed its present motion. This evidences to the Court that defendants' common interest argument is not a post hoc justification to withhold documents from discovery. Plaintiff assumes that Ready Pac disclosed the traceback analysis, "to apply

18

pressure to Tanimura with regard to its own affirmative claims in this and other litigations." Supp. Memo. at 8. Having the benefit of reviewing in camera the documents at issue, the Court disagrees. While this may have been part of Ready Pac's motivation, the Court finds that a substantial purpose of the exchange was to further the common purpose of disproving that lettuce caused the outbreak. The Court agrees with the general proposition set forth by plaintiff that "there must be a common purpose with regard to the specific disclosure at issue." Id. at 10. The Court finds this occurred even if defendants' exchanges may have also served another purpose.

As to all but one of the documents at issue the Court finds that a substantial purpose of the defendants' exchange was to further the common purpose of showing that lettuce did not cause the outbreak.[7] The one exception is Ready Pac's September 19, 2011 letter summarizing the pending litigation regarding the outbreak. Although the document was not exchanged to further the purpose of showing that lettuce did not cause the outbreak, it furthered another common purpose, i.e., to determine if there was a joint interest in exploring global settlement of all related litigation, including plaintiff's case.

---

[7] The requested documents regarding the drafting of the CIC Agreement are irrelevant. Warren Distributing Co. v. InBev USA LLC, 2008 WL 4371763, at *4 (D.N.J. September 18, 2008).

**CONCLUSION**

In sum, the Court finds that defendants have satisfied the three-pronged burden set forth in LaPorta, 340 N.J. Super. 262. Defendants have shown: (1) that the disclosures at issue were due to actual or anticipated litigation; (2) that the disclosures were done for the purpose of furthering a common interest; and (3) the disclosures were made in a manner not inconsistent with maintaining confidentiality against adverse parties.

Accordingly, for all the foregoing reasons, it is hereby ORDERED this 1st day of June, 2012, that plaintiff's Motion to Compel is DENIED.

s/Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge